KAKARAKIS BROS. v. PATORNO AND SON

---

(October 17, 1927. Opinion and Decree.)
(November 14, 1927. Rehearing Refused.)
(January 20, 1928. Writ of Certiorari and Review Denied by Supreme Court.)

---

(*Syllabus by the Court*)

1. Louisiana Digest—Evidence——Par. 337, 349.
   In weighing the testimony of witnesses that which is direct and un-impeached will prevail over that which is conflicting and contradictory.

Appeal from Civil District Court, Hon. Porter Parker, Judge.

Action by Kakarakis Bros. against A. Patorno and Son.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Dart & Dart, L. L. Dubourg, of New Orleans, attorneys for plaintiff, appellant.

A. J. Rossi, F. F. Tessier, Charles I. Denechaud, Ernest J. Robin, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. Plaintiffs claim of defendants $756.32, amount overpaid on a contract of sale of certain oils.

They allege that they reside in Chicago; that in October, 1919, they purchased from defendants forty-five barrels of Spanish olive oil at the price of $2.65 per gallon F.O.B. New Orleans; that said oil was shipped to plaintiffs on the Illinois Central Railroad by bill of lading, sight draft attached, during the early part of November, and was received by them on November 8th, 1919, when they paid the draft; that they were billed by defendants for 3410½ gallons, $9,036.50, and that they also paid $85.23 for refrigeration, making a total of $9,121.73; that on the arrival of said barrels of oil plaintiffs had the same weighed by a public weigher, which disclosed a shortage of 589 pounds in the gross weight of said 45 barrels, equal in gallons to 78.5 gallons, amounting, at the price of $2.65 per gallon, to the sum of $208.03; that plaintiffs then had the 45 barrels emptied and weighed to ascertain the amount of tare; that said weighing by the same public weigher disclosed that the tare on said barrels amounted to 1532 pounds more than the amount allowed by the defendant, equal to 206.9 gallons of oil, or at the price of $2.65 per gallon to $548.29; that the difference in gross weight and tare on said 45 barrels is as follows:

As billed by defendant:

Gross weight _____ 29,775 lbs.
Less Tare_____ 4,160 lbs.
                                   _____
Balance _____ 25,615 lbs.
                                   _____
Gross weight found by
  public weigher in
  Chicago _____ 29,186 lbs.
Tare _____ 5,712 lbs.
                                   _____
Balance _____ 23,474 lbs.
                                   _____
Difference in weight ___ 2,141 lbs.

Or a shortage, at the rate of 7.5 pounds to the gallon, of 285.46 gallons, at $2.65 per gallon makes $756.46, which the plaintiffs claim from the defendants.

The defendants admitted the sale of 45 barrels of oil at $2.65 per gallon, as alleged, the shipment thereof to the plaintiffs with a sight draft attached to a bill of lading and the payment thereof by plaintiffs; that they billed the plaintiffs for 3410½ gallons which, at $2.65 per gallon amounted to $9,036.50; but they denied all the other allegations of the petition.

There was judgment in favor of defendants, rejecting plaintiffs' demand.

They have appealed.

This case presents, therefore, two questions for determination: First: Did the 45 barrels shipped by defendants contain 3410½ gallons billed by defendants against the plaintiffs and paid by the latter; and Second: Was there a difference of 1552 pounds in the tare weight of those 45 barrels?

Anthony Patorno, on behalf of defendants, testifies that he originally purchased, through T. J. Lipscomb, agent, fifty barrels of oil; that the oil at that time was weighed on the dock by Prados and Douglas, public weighers, upon whose certificate they settled with Lipscomb, both as to tare and gross weight; they had the barrels coopered because they had leaked badly; the oil was then hauled to defendants' warehouse; of this oil they sold 45 barrels to the plaintiffs of Chicago, through the American Grocers Brokerage Company also of Chicago, for the price of $2.65 per gallon.

Owing to the leakage of the barrels they were emptied and weighed, and then refilled and reweighed by Prados and Douglas in order to get at the exact weights; the 45 barrels were then hauled by defendants' drays to the cold storage and there they were frozen hard; and from the cold storage they were delivered directly to the railroad refrigerator cars, and thence hauled to Chicago; the 45 barrels were thus weighed twice.

The defendants produced a certificate of weights, dated New Orleans, October 29th, 1919, signed by Prados and Douglas, per "Spindle," purporting to be the separate weights of 45 several barrels of olive oil, ex store, for account of A. Patorno, totalling in pounds _____ 29,775
Less tare weight of barrels _____ 4,160
                                   _____
Balance _____ 25,615
which at the rate of 7.56 pounds to the gallon, at $2.65 per gallon, made a total of $9,036.50. Plaintiffs also added thereto for refrigeration of oil $85.23. But this item seems to have been settled and is not insisted upon.

John Lipscomb, for defendants, testified that he sold 50 barrels of oil to the defendants; he did not have the barrels gauged or weighed; he made his bills according to the weights shown on the barrels; oil is generally sold by kilos, each equal to 2.20 pounds; the tare was marked on the barrels; Patorno paid him according to those weights.

John T. Spindle is in the business of weighing and gauging for the last 20 years,

for Prados and Douglas; he weighed 45 barrels of oil in Patorno's store in October, 1919; the weights are indicated on his certificate; he weighed each barrel with the oil in it; he weighed only five empty barrels to see if the tare would correspond with the tare marked on the barrel, and it did; the other 40 barrels were not emptied at all. Mr. Cusach signed the certificate; witness does the weighing, but Cusach signs all certificates as he is the certificate clerk.

It was admitted that if Henry Thompson testified he would swear that he took the 45 barrels from the store of A. Patorno and delivered them as received to the cold storage.

Gus Kakarakis, one of the plaintiffs, testified that the oil arrived in Chicago on November 13th, frozen solid, with none of the barrels leaking; they paid the draft of $9,121.73 on November 8th, 1919; upon its arrival they had the oil and the barrels weighed together by V. S. Callaghan, public weigher; and on June 3rd, 1920, nearly seven months afterwards, they caused the barrels to be weighed by the same weigher, separately, the whole in the presence of witness; the oil and the barrels according to Patorno invoice weighed 29,775 pounds; according to the Callaghan weight 29,186 pounds; a deficiency of 589 pounds.

The tare weight of the barrels according to Callaghan was 5712 pounds; according to Patorno 4160 pounds; an excess of 1552 pounds; making a difference of 2141 pounds. The barrels were not leaking and the weather was cold, below freezing in the refrigerator car. The equivalent of 589 pounds is 78.50 gallons; and of 1552 pounds is 184.86 gallons; making a total of 263.36 gallons; which, at $2.65 a gallon, is equivalent to $697.90; the barrels weighed in June, 1920, bore marks and were the same weighed on November 13th, 1919.

Frank Kakarakis testified that the oil and barrels were weighed upon their arrival by V. S. Callaghan; the barrels were afterwards weighed separately; he corroborates Gus Kakarakis in every detail.

V. S. Callaghan is a public weigher in Chicago; on November 13th, 1919, he weighed 45 barrels of oil shipped by A. Patorno to Kakarakis Brothers, and on June 3rd, 1920, he weighed the same 45 barrels empty; he annexed his two certificates for the oil and for the barrels, both signed by him; the oil was frozen hard in the barrels on November 13th, and the barrels did not leak, nor was there any oil on the floor of the car.

W. W. Beerkin, President of the American Grocers' Brokerage Co., corroborates the sale made through them by Patorno to Kakarakis and annexed much correspondence on the subject between the brokerage company and Patorno. The company obtained from the defendants a return of most of the $85.23 charged by defendants for refrigeration and included in the amount of their draft of $9,121.73. From this correspondence it appears that immediately after the weighing by Callaghan plaintiffs called the attention of the defendants to the difference in weights and tares and sent them an invoice for the same. The plaintiffs had emptied six barrels and ascertained the tare on them and concluded the same tare existed on all other barrels.

In three letters dated November 3rd, December 8th, 1920, and January 18th, 1921, defendants wrote to the American Grocers Brokerage Co., telling them that the barrels arrived from Spain in very bad condition and leaking considerably; that they were immediately recoopered on the dock; that the oil was then loaded upon an I. C. R. R. Co. refrigerator car for shipment to Kakarakis, after which the barrels began to leak tremendously; two days elapsed before they could unload the car, but not before the oil had leaked about 400 gallons or $1800 worth; the oil was then withdrawn from the barrels, which were recoopered

and strengthened individually; the empties were then weighed, refilled and frozen by refrigeration and shipped immediately; they refunded $5.96 charged in error, and also $53.27, the actual cost of freezing.  Two important statements are contradicted by defendants, or his witnesses.  Lipscomb testified that he never had the oil gauged. The defendants were requested to produce the alleged first weighing by Prados and Douglas, which they failed to do.  Neither did they show what the barrels they bought weighed, nor the price paid by them.  Nor did Spindle or Prados and Douglas testify that they weighed the barrels twice.

John T. Spindle testified that the tare on the barrels was marked; he weighed only five empty barrels; the tare on them cor responded with the weight, so he adopted the tare weight marked on the remaining 40 barrels without weighing them empty; the remaining 40 barrels were not emptied at all.

In the presence of this discrepancy between the testimony of defendant and his letters, and between his witnesses and himself, and the testimony of Spindle, who certifies to having weighed 45 barrels, when in fact he weighed only five, their testimony brings no conviction to our minds.

We have no assurance that the weighing done by Patorno was before or after this tremendous leaking of the barrels.  Nor that Spindle did not take the weights of the barrels full according to the weights shown on the barrels, as he did for the empty barrels.  On the other hand, the plaintiffs' three witnesses, Gus and Frank Kakarakis and Callaghan, the public weigher, swear positively and clearly and without any circumstance to affect the truth of their testimony, as to the weights of the 45 barrels with the oil within them and as to the tare of the barrels after the oil had been taken out of them.

The preponderance of credibility is with them.  Nor is there any strength in the argument that the barrels absorbed any oil after they had been weighed in New Orleans.  They were the same old barrels that had left Spain with the oil in them, and they were oil-soaked when they arrived in New Orleans.

After the oil was taken out of them from November, 1919, to June, 1920, they must have weighed less.  Besides, if it is true that the barrels were weighed in New Orleans on the eve of their shipment, they could not have absorbed oil during their conveyance to Chicago because the oil was frozen hard; and when the oil reached Chicago after a few days from the alleged weighing in New Orleans, six of the barrels were weighed in Chicago and already showed ·a heavier weight.  This is not a case where the opinion of the trial Court can control this Court, because all of plaintiffs' testimony was taken in Chicago by commission, while all of defendants' was heard in New Orleans.

We conclude, therefore, that the plaintiffs are entitled to reimbursement for the deficiency in the weight of the oil and barrels and for the excess in weight of the empty barrels.

The former is _____ 589 pounds

The latter is _____ 1,552 pounds

Making a total of _____ 2,141 pounds at the rate of 7.56 pounds to each gallon equals 283.20 gallons; at the price of $2.65 per gallon makes $750.48.

It is, therefore, ordered that the judgment herein be reversed and set aside, and it is now ordered that the defendants, A. Patorno and Son,· and the individual members thereof, Anthony Patorno, Jr., and John Patorno, be condemned in solido to pay to the plaintiffs herein, Kakarakis Brothers, the sum of Seven Hundred Fifty and 48-100 Dollars, with five per cent per annum interest from January 21st, 1921, till paid and all costs of suit.

**Judgment reversed.**